QUINN, Respondent, vs. CITY CAB COMPANY and another, Defendants and Respondents: WISCONSIN PUBLIC SERVICE CORPORATION, Interpleaded Defendant and Appellant.

*April 12—June 25, 1938.*

For the appellant there were briefs by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Walter T. Bie*.

*M. E. Davis* of Green Bay, for the respondent Ellen Quinn.

For the respondents City Cab Company and New York Casualty Company there were briefs by *Kadwit & Lepp* of Kenosha and *Earl H. Jacobs* of Green Bay, and oral argument by *Mr. Harry J. Kadwit* and *Mr. Jacobs*.

The following opinion was filed May 17, 1938:

FOWLER, J. The appellant assigns as error denial by the trial court of its motion for judgment notwithstanding the verdict on the ground that as matter of law no negligence was proved against it, and denial of its alternative motion for a new trial in the interest of justice on the ground that the jury's finding that it was negligent is contrary to the overwhelming weight of the evidence.

As briefly stated in the preceding statement of facts, the plaintiff was injured when the appellant's streetcar collided with a cab of the defendant Cab Company in which she was riding on the cab's stopping on the car tracks ahead of the approaching streetcar. The cab, traveling south straddling the west rail of double car tracks, turned east between street intersections. The driver of the cab testified that the streetcar, traveling north, was one hundred feet away when the cab stopped. Another cabdriver who testified that he saw

the collision testified that the streetcar was then seventy-five feet away. Both testified that thirty seconds elapsed between the stopping of the cab and the collision, that the streetcar was "coming fast," and that its speed was not reduced. If the streetcar traveled one hundred feet in thirty seconds, it averaged approximately two and two-ninths miles per hour. If it traveled seventy-five feet in that time, it averaged approximately one and two-thirds miles per hour. The testimony of these witnesses that the streetcar did not decrease its speed is thus manifestly incredible, whether, as the cabdrivers testified, it was "coming fast" when the cab stopped, or, as the motorman testified, it was going fifteen to twenty miles per hour when the cab turned to cross the street. This of itself did not necessarily prevent the jury from believing the cabdrivers as to distance or time, but assuming that the jury believed the cabdrivers in this respect, this affords no support whatever for the jury's finding that the motorman was negligent "for failing to have the streetcar under control so that by a proper application of the brakes the collision could have been avoided." It is an undisputed physical fact that sand was scattered along the street for four or five feet about the place of collision. The application of the emergency brake on streetcars equipped as was the one involved discharges sand on the rails of the streetcar tracks. The presence of the sand demonstrates that the emergency brake was applied. The car stopped within ten feet at most and most likely five feet after its application. Just where the sand lay in reference to the exact point of collision is definitely fixed. Two witnesses to the collision were sitting in an automobile parked at the east curb of the street. The cabdriver stopped his car to avoid hitting this automobile. Both these witnesses testified that the sand lay alongside the parked car, which was not moved by the collision, and one of them testified it lay five feet back of where the "car" stopped. He did not expressly say that by "car" he meant cab, but he

doubtless so meant because the streetcar moved only two feet after hitting the cab. This testimony is not in any way disputed. The motorman testified that the cab was about forty-five feet away when it started to turn across the car tracks. The motorman, according to his testimony, first applied the air brake. This by his testimony would have slowed the streetcar sufficiently to have allowed the cab to clear the streetcar if it had not stopped. The cabdriver also testified that he had ample time to clear the streetcar had he not stopped to avoid hitting the parked automobile above referred to. The cabdriver, the two men in the parked automobile, the motorman, and a passenger in the streetcar all testified that the streetcar moved the cab only two or at most two and a half feet. The sand on the street demonstrates that the emergency brake stopped the streetcar within five feet. Had it been applied three or four feet farther away from the cab the streetcar would not have reached the cab. The undisputed testimony shows that the motorman had control of the streetcar at all times after he saw the cab, and by his testimony and the finding of the jury as to his lookout he saw the cab when it started to turn across the track. If there was any question as to negligence of the motorman under the jury's findings as to lookout and speed, it was *not* as to having control of the streetcar, but as to timely application of the emergency brake. Under the testimony of both the cabdriver and the motorman that the former had ample time to cross ahead of the streetcar if the cab had not been stopped, no negligence can be imputed to the motorman for first applying the air brake instead of the emergency brake. The overwhelming evidence is that only a second or two elapsed between the stopping of the cab and the collision. The two men in the parked car, the motorman, and a passenger in the streetcar, all of whom were apparently credible and whose testimony was clear and definite and in no wise impeached by conflicting statements or otherwise, so testified. The

plaintiff also testified that "the whole thing [turning across the car tracks and the collision] happened in the space of just a couple of seconds;" that "she remembered the cab turning and the next instant it was struck," although her testimony is so contradictory in details as perhaps to render it of little probative value. That the motorman was at all times watching the cab appears both from his direct testimony and the jury's finding as to his lookout. It seems to us utterly unreasonable that the motorman, with his car under such control as the established physical fact shows that he had it, would have run into the cab had it been one hundred or seventy-five feet away when it stopped. The natural thing for an experienced motorman to do under the circumstances would be to put and keep the streetcar at low speed with the air brake until the cab stopped or indicated it was stopping and then instantly apply the emergency brake. The motorman testified that he did just that. The undisputed physical fact as to the sand demonstrates that the emergency brake was not applied until the streetcar was five or six feet from the cab. If the streetcar had been seventy-five or one hundred feet away from the cab when the cab stopped, it is incredible that the motorman, who had had twelve years of experience as a motorman, would have withheld application of the emergency brake until the streetcar came within five or six feet of the cab. This being incredible, the testimony that the car was seventy-five feet away is incredible. It is also incredible that an experienced motorman watching for thirty seconds a cab standing still on the streetcar tracks ahead of him would withhold action to bring his car to a stop until within five or six feet of it when means to stop it could be instantly applied. This being incredible, it is incredible that thirty seconds elapsed from the stopping of the cab to the collision.

We are of opinion that there is no credible evidence to support a finding of negligence of the motorman.

*By the Court.*—The judgment of the circuit court is reversed, with instructions to enter judgment dismissing the complaint and the cross complaint as against the Wisconsin Public Service Corporation, with costs against the City Cab Company which interpleaded the Public Service Corporation.

FRITZ, J., dissents.

A motion for a rehearing was denied, with $25 costs, on June 25, 1938.